**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                No. 16-CV-00659-JAP-GBW
                                No. 13-CR-00961-JAP

ARTHUR SANCHEZ,

        Defendant.


**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before the Court on Defendant's Motion to Vacate, Set Aside, or

Correct Sentence under 28 U.S.C. § 2255.  *Doc. 1.*[1]  Defendant seeks to have his

conviction and sentence set aside pursuant to the Supreme Court's decision in *Johnson v.*

*United States*, which struck down the residual clause of the Armed Career Criminal Act

(ACCA) as unconstitutionally vague under the Fifth Amendment Due Process Clause.

135 S. Ct. 2551 (2015).  *See generally doc. 1.*  Having reviewed the initial and

supplemental briefing on Defendant's motion (*docs. 10, 14, 17, 19*) and the record before

the Court, I recommend denying the Motion.

## I.    BACKGROUND

On December 17, 2013, Defendant pled guilty to the offenses of possession of

heroin with intent to distribute in violation of 21 U.S.C. § § 841(a)(1) and (b)(1)(C) and

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-659-JAP/GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 13-CR-961-JAP.  For filings made on both dockets, only the civil docket number is given.

being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). *Cr. docs. 30, 31, 32.* Defendant's plea agreement, entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, included a binding stipulation to a term of 180 months (fifteen years) of imprisonment and three years of supervised release. *Cr. doc. 32* at 1, 4.

Prior to Defendant's sentencing, the United States Probation Office prepared a presentence report (PSR) which concluded that Defendant had at least three prior "violent felony" convictions. PSR ¶ 57. Consequently, he qualified as an armed career criminal under the ACCA. *See* PSR ¶¶ 57, 71. The ACCA provides that a defendant convicted of being a felon in possession of a firearm faces a minimum term of fifteen years' imprisonment where he has three or more previous convictions for a "violent felony." 18 U.S.C. § 924(e)(2)(B); *see also Logan v. United States*, 552 U.S. 23, 27 (2007). At the time of Defendant's sentencing, the ACCA defined "violent felony" as any crime punishable by imprisonment for a term exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]*

18 U.S.C. § 924(e)(2)(B) (emphasis added). The italicized portion is known as "the residual clause" of the ACCA, which the Supreme Court struck down as unconstitutional under the void-for-vagueness doctrine in its *Johnson* decision. *See* 135

S. Ct. at 2557-61.[2]

Defendant's past convictions that were classified in the PSR as "violent felonies" justifying his designation as an armed career criminal under 18 U.S.C. § 924(e) include: (1) Aggravated Assault with a Deadly Weapon; (2) Robbery; and (3) Aggravated Battery with a Deadly Weapon. PSR ¶ 57. Defendant knew that he would be classified as an armed career criminal prior to entering into the plea agreement which stipulated a term of imprisonment of 180 months. *See cr. doc. 50* at 4-5. At the time of his sentencing, Defendant did not dispute any of the PSR findings. *See id.* at 2.

Due to Defendant's classification as an armed career criminal and Defendant's use of a firearm in connection with a controlled substance offense, the PSR assigned a base offense level of 34. PSR ¶ 57; U.S.S.G. § 4B1.4(b)(3)(A).[3] After the application of a reduction for acceptance of responsibility, Defendant's base offense level was 31. PSR ¶ 58. With a criminal history category of VI and an offense level of 31, Defendant's guideline range was 188 to 235 months. PSR ¶ 115. However, the Court imposed the sentence to which the parties stipulated in the plea agreement of imprisonment for 180

---

[2] The Supreme Court has instructed that its *Johnson* decision is retroactively applicable to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). Because Defendant filed his § 2255 petition within one year of the Supreme Court's decision in *Johnson*, it is properly before the Court to decide whether *Johnson* applies to—and justifies vacating—Defendant's sentence, which was enhanced under the ACCA. *See Dodd v. United States*, 545 U.S. 353, 357 (2005).

[3] Defendant was also classified as a career offender under the guidelines due to having at least two prior felony convictions of "crimes of violence." PSR ¶ 57; *see also* U.S.S.G. § 4B1.1. The ACCA enhancement was applied rather than the career offender enhancement because the ACCA offense level of 34 was greater than the career offender offense level of 32. PSR ¶ 57; U.S.S.G. § 4B1.4(b)(3)(A). Had the career offender enhancement been applied rather than the ACCA enhancement, the applicable advisory sentencing guideline range would have been 151-188 months, after adjusting for acceptance of responsibility. *See* U.S.S.G. Sentencing Table (2013).

months followed by three years of supervised release.  *Cr. doc. 32* at 4; *cr. doc. 50* at 4, 6-7.

## II.    LEGAL STANDARD

Whether the underlying criminal convictions of Defendant's ACCA enhancement qualify as "violent felonies" depends on whether they satisfy the definition of "violent felony" under the remaining clauses of the ACCA, now that the residual clause has been struck down as unconstitutional.  *See* 18 U.S.C. § 924(e)(2)(B). In making its determination, the Court should consider the offense "generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  *Begay v. United States*, 553 U.S. 137, 141 (2008).   This "categorical approach" requires the Court to "consult only the fact of conviction and the statutory definition of the prior offense, and [] not generally consider the particular facts disclosed by the record of conviction." *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010) (internal quotations omitted); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

The Supreme Court explained in *Johnson v. United States*, 559 U.S. 133, 140 (2010)[4] that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person."  Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might

---

[4] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 1272. Therefore, in evaluating whether Defendant's past convictions under New Mexico law constitute violent felonies under the ACCA, the Court must first consider whether each state statute that he violated necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" violent force against the person of another. If so, it is categorically a "violent felony" under the force clause of the ACCA.

If, however, the statutory definition of any of Defendant's prior offenses is *broader* than the ACCA's definition of "violent felony" and the prior offense is "divisible," the Court will then apply what is known as a "modified-categorical approach." *Ramon Silva*, 608 F.3d at 669; *see also Mathis*, 136 S. Ct. at 2249, 2256. Under this approach, the Court should consult "charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that qualifies as a violent felony."[5] *Id.* Any three such felonies may validly underlie the application of the ACCA enhancement. 18 U.S.C. § 924(e)(2)(B)(i).

## III. ANALYSIS

Defendant's § 2255 motion argues that his convictions for robbery, aggravated assault with a deadly weapon, and aggravated battery with a deadly weapon do not

---

[5] Consultation of such documents does not open the door to a subjective fact-based inquiry as to whether a particular defendant committed an offense in a violent manner. Rather, the Court may consult these documents solely to determine the elements of the particular offense a defendant committed where a statute defines more than one offense, each with separate elements. *See Mathis*, 136 S. Ct. at 2249.

qualify as violent felonies under the ACCA without reliance on the unconstitutional residual clause struck down in *Johnson II*. *See doc. 1* at 3-21. Defendant asserts that none of these offenses satisfies the "elements clause" of the ACCA's "violent felony" definition, as the offenses do not require the intentional use of violent physical force against the person of another. *See id.* Accordingly, Defendant asserts that he is entitled to resentencing under *Johnson II*. *Id.* at 1, 22.

As a preliminary matter, Defendant's past convictions clearly do not qualify under the clause enumerating the specific felonies of "burglary, arson, or extortion," or those "involv[ing] use of explosives." *Id.* at (e)(2)(B)(ii); *see also* PSR ¶ 57. Therefore, the only question before the Court is whether at least three of Defendant's past convictions qualify as violent felonies under the "elements clause"—that is, whether each conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* at (e)(2)(B)(i). Each of Defendant's predicate criminal convictions for his armed career criminal designation will be addressed in turn to determine whether the ACCA enhancement was properly applied in light of *Johnson II*.

### i. Robbery

Defendant acknowledges that he was convicted of robbery pursuant to N.M.S.A. § 30-16-2. *Doc. 1* at 4-12. That statute sets forth the elements of the crime as follows:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, *by use or threatened use of*

*force or violence.*

Whoever commits robbery is guilty of a third degree felony.

Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M.S.A. § 30-16-2 (emphasis added).

The United States initially conceded that robbery in New Mexico is no longer a violent felony under the ACCA, but withdrew its concession in a supplemental brief following the issuance of the Tenth Circuit's decision in *United States v. Harris*, 844 F.3d 1260, 1266-67 (10th Cir. 2017), *petition for cert. filed*, *Michael Kevin Harris v. United States* (U.S. Apr. 4, 2017) (No. 16-8616). *See doc. 19.* In addition to relying on *Harris* in its supplemental brief, the United States quoted at length the undersigned's Proposed Findings and Recommended Disposition (PFRD) issued in another case in this district which addressed the same question of law. *See id.* at 4-7 (discussing *United States v. Baker*, Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 9* in 16-cv-715 PJK/GBW (D.N.M. Dec. 15, 2016), adopted by United States Circuit Judge Paul Kelly sitting by designation in his Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, *doc. 14* in 16-cv-715 PJK/GBW (D.N.M. Mar. 17, 2017)). Defendant articulated his arguments on the merits of the proposed supplemental brief in his response opposing the United States' request to file a supplemental brief. *See doc. 17.* As noted in the order granting supplemental briefing,

Defendant's arguments in *doc. 17* will be considered as a response to the United States' supplemental brief. *Doc. 18*.

As discussed above, I have already considered whether New Mexico robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another" as required to satisfy the elements clause of the ACCA, and I have concluded that it does. *See, e.g., Baker, doc. 9* at 6-13 in 16-cv-715 PJK/GBW. The United States relies heavily on the reasoning of my PFRD in *Baker*, and Defendant offers numerous arguments rebutting that reasoning. *See generally docs. 17, 19*. Having considered the briefing of the parties, I remain persuaded that New Mexico robbery constitutes a violent felony under the elements clause of the ACCA. In large part, this recommendation will follow the reasoning in *Baker* while responding to Defendant's arguments which merit further discussion.

As quoted above, New Mexico's robbery statute requires (i) a theft (ii) from the person or immediate control of another (iii) by the use or threatened use of force or violence. Consequently, "[t]he use of force, violence, or intimidation is an essential element of robbery." *State v. Lewis*, 867 P.2d 1231, 1233 (N.M. Ct. App. 1993). "The force or intimidation is the gist of the offense." *State v. Sanchez*, 430 P.2d 781, 782 (N.M. Ct. App. 1967). Moreover, the force or fear required "must be the moving cause inducing the victim to part unwillingly with his property. It must overcome the victim's resistance. It must compel one to part with his property. It must be such that

the power of the owner to retain his property is overcome." *Id.* (internal citations

omitted). In fact, the force (or threatened force) must be employed at the moment of the

taking because "force used to retain property immediately after its nonviolent taking"

does not constitute robbery in New Mexico. *Lewis*, 867 P.2d at 1234. Rather, "the use or

threatened use of force must be the factor by which the property is removed from the

victim's possession." *Id.* at 1233.

This requirement that the force used must be the lever by which the property is

removed from the person or his immediate control satisfies *Johnson I*'s requirement that

the force was used against the person of another. This conclusion is bolstered by the

repeated descriptions by the New Mexico courts that the robbery statute "is clearly

designed to protect citizens from violence . . . . Robbery is not merely a property crime,

but a crime against a person." *State v. Bernal*, 146 P.3d 289, 296 (N.M. 2006). As the

New Mexico Court of Appeals has explained, the requirement that property be taken

with sufficient force "so as to overcome the resistance of attachment" before larceny is

elevated to robbery is intended to reflect "the increased danger to the person that

robbery involves over the offense of larceny." *State v. Curley*, 939 P.2d 1103, 1106 (N.M.

Ct. App. 1997).

Having established that the use or threatened use of force must be against the

person of another, the question still remains whether the amount of force required

under the New Mexico robbery statute is categorically sufficient to meet the standard

outlined in *Johnson I*—that is, "force capable of causing physical pain or injury to another person." 559 U.S. at 140. As quoted above, the fundamental requirement is that the force (or fear of threatened force) "must be the moving cause inducing the victim to part unwillingly with his property. It must overcome the victim's resistance. It must compel one to part with his property. It must be such that the power of the owner to retain his property is overcome." *Sanchez*, 430 P.2d at 782 (internal citations omitted). Whether the force employed during a larceny is sufficient to elevate the offense to robbery requires an evaluation by the fact-finder. *See State v. Clokey*, 553 P.2d 1260, 1260 (N.M. 1976). *De minimis* force will not sustain a robbery conviction. *See Curley*, 939 P.2d at 1105 ("[W]hen no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery."). Mere "touching or jostling," or even the more overtly forceful act of pressing a fist into the victim's back while stealing his property, are all insufficient to establish the force element; such circumstances support only the lesser conviction of larceny. *Sanchez*, 430 P.2d at 782; *see also Curley*, 939 P.2d at 1104 (rejecting as dictum language in earlier decisions indicating "that even a slight amount of force, such as jostling the victim or snatching away the property, is sufficient" force for a robbery conviction).

 The Tenth Circuit recently provided a useful reminder of the nature of the relevant inquiry when determining if a state statute meets *Johnson I*'s force requirement.

*Harris*, 844 F.3d at 1264-65. In considering whether the Colorado offense of robbery qualified as a "violent felony" under the elements clause of the ACCA, the *Harris* court began its analysis with the "oft-quoted" language from *Johnson I*: "We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id*. at 1264 (citing *Johnson I*, 559 U.S. at 140) (emphasis in original). The reminder came next:

> It is important to keep in mind why it was necessary for the Court to use the language it did. For it was rejecting the government's argument that physical force means "force" known in common law battery parlance. *See Johnson I*, 559 U.S. at 139, 130 S. Ct. 1265 ("There is, however, a more specialized legal usage of the word 'force': its use in describing one of the elements of the common-law crime of battery. . . ."). That is, the force element is satisfied by even the slightest offensive touching. *Id*. So it makes sense that the Court, in construing the meaning of physical force in the ACCA's *violent* felony definition, referenced "a substantial degree of force," "strong physical force," or "powerful force." Indeed, the Court was differentiating between the force required for the common law offense of battery.

*Id.* at 1265 (internal citation omitted). This passage serves to emphasize that, by requiring something more than the slightest offensive touching – "a substantial degree of force" – to satisfy the elements clause of the "violent felony" definition, *Johnson I* did not thereby create a requirement of extreme violence. As *Harris* highlighted, force "capable of causing physical pain or injury" includes "a slap in the face." *Id*. (citing *Johnson I*, 559 U.S. at 143). In fact, the court cited with approval Justice Scalia's concurrence, which identifies "[h]itting, slapping, shoving, grabbing, pinching, biting,

11

[and] hair pulling" as conduct that qualifies as violent force. *Id.* (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1421 (2014) (Scalia, J., concurring)). Moreover, the *Harris* court stressed that "in construing the minimum culpable conduct [required by the state statute], such conduct only includes that [to] which there is a 'realistic probability, not a theoretical possibility[,]' the state statute would apply." *Id.* at 1264 (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013)).

With these standards in mind, the court held that the force required by Colorado's robbery statute matched the definition of "physical force" set forth in *Johnson I. Harris*, 844 F.3d at 1265-71. Notably, two features of Colorado robbery which were central to the court's holding are shared in common with the New Mexico crime of robbery. First, as in New Mexico, robbery in Colorado requires a taking "*by* violence or intimidation." *Id.* at 1266 (citing *Borghesi*, 66 P.3d at 99) (emphasis added); *see also Lewis*, 867 P.2d at 1233. That is, both statutes require that the force (or threat of force) used must be the means by which the taking is accomplished. Second, as in New Mexico, "Colorado's 'robbery statutes are primarily intended to protect persons and not property.'" *Harris*, 844 F.3d at 1267 (citing *Borghesi*, 66 P.3d at 100-01); *see also Bernal*, 146 P.3d at 296. Consequently, both statutes emphasize the "assaultive nature of the crime[.]" *Harris*, 844 F.3d at 1267. While the robbery statutes and interpretative caselaw are not identical in Colorado and New Mexico, the reasoning of *Harris* supports a finding that New Mexico's robbery statute satisfies the *Johnson I* standard.

Another recent Tenth Circuit case is also informative. In *United States v. Nicholas*, No. 16-3043, 2017 WL 1429788 (10th Cir. Apr. 24, 2017) (unpublished), the court was called upon to decide if a conviction under the Kansas robbery statute satisfied the *Johnson I* force requirement. As it must, the court looked first to determine exactly what kind of force was required under Kansas law to prove robbery. *Id*. at *3. The court found the Kansas Supreme Court opinion in *State v. McKinney*, 961 P.2d 1 (1998) controlling on that issue. *Id*. at *3-*4. In *McKinney*, the defendant "conceded that he snatched the purse from the victim's arm, but denied that he pushed her in the process." *Id*. at *3 (citing *McKinney*, 961 P.2d at 8). Nonetheless, the *McKinney* court held that, even accepting the defendant's version of facts, he was guilty of robbery. *Id*. (citing *McKinney*, 961 P.2d at 8). Consequently, the Tenth Circuit concluded that, because no shove or any force beyond the hasty purse snatch was required to underlie a robbery conviction in *McKinney*, "Kansas robbery [did not] require[] more than de minimis physical contact." *Id*. at *4. Therefore, the Tenth Circuit concluded that Kansas robbery did not satisfy the *Johnson I* force requirement. *Id.*

Important to the analysis here, New Mexico courts have directly rejected the low force standard set out in *McKinney* and found dispositive in *Nicholas*. As noted above, *de minimis* force will not sustain a New Mexico robbery conviction. *See Curley*, 939 P.2d at 1104-05. Mere "touching or jostling," or even the more overtly forceful act of pressing a fist into the victim's back while stealing his property, are all insufficient to

establish the force element of robbery. *Sanchez*, 430 P.2d at 782. In fact, the *Curley* court concluded that the defendant was entitled to an instruction on the lesser included offense of larceny based on his theory of the crime even though he admitted to shoving the victim before taking her purse, because the jury could have found that the shove was accidental and independent of the taking. 939 P.2d at 1107. Consequently, if the facts of *McKinney* had arisen in New Mexico, they would have been insufficient to establish a robbery under the *Curley* precedent, because there was no shove of the victim, let alone a shove which was the lever separating the victim from her property.

To the undersigned, it appears self-evident that the force required for robbery in New Mexico—force which overcomes the victim's resistance and compels the victim to part with his property—is at least commensurate to the slapping adequate under *Johnson I*. Therefore, I conclude that the crime of robbery in New Mexico "has as an element the use . . . of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).[6]

Having reviewed the similar analysis in *Baker*, Defendant raises a number of arguments in opposition. The undersigned finds none of them persuasive, but some

---

[6] Though its decision predates *Johnson I*, the Tenth Circuit Court of Appeals has reached the same conclusion. *See United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993). In *Lujan*, the Court of Appeals confronted a defendant convicted of manslaughter in California and robbery in New Mexico, under the same statute at issue here. *Id.* at 891. In holding that both convictions constitute "violent felonies" under the ACCA, the court explained: "[The California manslaughter statute] has 'as an element the use, attempted use, or threatened use of physical force against the person of another' and thus is a violent felony under the ACCA. The New Mexico robbery statute also contains the required element of force[.]" *Id.* at 892 (quoting and italicizing for emphasis the force element of N.M.S.A. § 30-16-2).

merit further discussion.

First, Defendant opposes considering the purpose of New Mexico's robbery statute during the "force required" analysis, arguing that "there is a big difference between the purpose of a statute defining an offense and the elements of that offense." *Doc. 17* at 9. Defendant points to the fact that "certainly one of the purposes of the Florida battery statute the Supreme Court [held not to be a violent felony] in *Johnson I* was to prevent dangerous and violent altercations." *Id.* Defendant argues that the above analysis (1) ignores the directive from *Mathis* to consider only the elements of the offense, and (2) threatens to reintroduce the "rank speculation" required by the invalidated residual clause. *Id.* at 10. Defendant's argument on this point is peculiar. As he himself points out, the categorical approach requires courts to consider far more than the bare language of a statute. *See doc. 17* at 13-14. Otherwise, Defendant's petition would be dismissed out-of-hand, given the similarity between the New Mexico statute's requirement of the "use or threatened use of force or violence" against a person and the ACCA's requirement of "an element [of] use [or] threatened use of physical force against the person of another." Instead, the Court must determine if the degree of force required by the statute meets the requirement of *Johnson I*. To do so, the Court looks to how that element is defined by New Mexico's state courts. It is those courts which looked to the purpose of New Mexico's robbery statute to determine the nature of the force required. *See Bernal*, 146 P.3d at 296; *Curley*, 939 P.2d at 1106. It is entirely

appropriate—indeed required—for this Court to rely on their analysis. *See, e.g., Harris*, 844 F.3d at 1266-67 (considering the Colorado Supreme Court's directive that "robbery statutes are primarily intended to protect persons and not property" in construing the force element of the Colorado robbery statute) (quoting *Borghesi*, 66 P.3d at 99); *see also Taylor v. United States*, 495 U.S. 575, 593-94 (1990) (holding that the enumerated crime of burglary in the ACCA refers to the generic—rather than the common-law—definition of burglary because to hold otherwise would "read into the statute a definition of 'burglary' . . . obviously ill[-]suited to [the ACCA's] purposes.").

Second, Defendant argues that the amount of force required under the New Mexico robbery statute is not categorically sufficient to meet the standard outlined in *Johnson I* by citing to state jurisprudence instructing that "[t]he amount or degree of force is not the determinative factor" in establishing the force element of simple robbery, *State v. Martinez*, 513 P.2d 402, 402 (N.M. Ct. App. 1973), as well as to the committee commentary of the New Mexico jury instruction on simple robbery, which explains that "the amount of force is immaterial." N.M. R. CR. UJI 14-1620. *See doc. 1* at 6. To the extent that these authorities suggest that no significant force is required to satisfy the force element of New Mexico robbery, they are contrary to controlling New Mexico jurisprudence. As cited above, New Mexico courts have held in case after case that robbery requires the force "must overcome the victim's resistance. It must compel one to part with his property. It must be such that the power of the owner to retain his

property is overcome." *Sanchez*, 430 P.2d at 782 (internal citations omitted); *see also Curley*, 939 P.2d at 1104-06; *Lewis*, 867 P.2d at 1233-34; *Sanchez*, 430 P.2d at 782.

Moreover, viewing these quotes cited by Defendant in isolation removes them from the context in which they were written. Each is written against the backdrop of the oft-stated (both by New Mexico courts and herein) requirement that the force must be sufficient to overcome the resistance of victim's attachment. So, these authorities simply stand for the proposition that the crime of robbery does not require some absolute level of force. Instead, it is relative to the particular victim and the particular circumstances. But that standard does not equate to a *de minimis* one, because the force must overcome the power of the given victim. This standard is entirely consistent with the one set out in *Johnson I*—force "capable of causing physical pain or injury." 559 U.S. at 140. Relevant here is the question: "Capable of causing physical pain or injury" to whom? The Supreme Court never suggested that the answer should be some objective standard "everyman." Instead, it makes sense that the force must be capable of causing pain or injury to the relevant class of victims. For example, under *Johnson I*, the level of force required in a statute criminalizing infant abuse would be less than the level of force required in a generic assault statute. Similarly, the absolute degree of force required by the New Mexico robbery statute may vary depending on the vulnerability of the victim who is resisting -- an elderly person may have her resistance overcome by lesser force than would be necessary to overcome the resistance of a strong, robust

victim. But so, too, would "force capable of causing pain or injury" vary depending on the vulnerability of the person against whom the force is used. To be clear, this rationale does not envision considering the facts of individual convictions as is prohibited by the categorical approach. Instead, the point is that, in every New Mexico robbery conviction, the government was required to establish that the force used or threatened was force "necessary to overcome the victim's resistance." *Curley*, 939 P.2d at 1107. I conclude that such a degree of force would categorically be capable of causing pain or injury to that victim.

Third, Defendant points to a particular fact pattern to demonstrate the alleged lack of *Johnson I* force required under New Mexico robbery. Defendant argues that *Curley* would permit a robbery conviction based upon "snatching a pin from a person's sweater using force to overcome the sweater's attachment." *Doc. 17* at 4. He then states as self-evident that such force is "not necessarily . . . capable of causing pain or injury." *Id*. I disagree. As the *Curley* court explained, theft of a pin from a person's clothing would only constitute robbery of it was "so attached to the person or his clothes as to require some force to effect [] removal." *Id*. at 1106. In contrast, if such an item was instead taken by stealth without causing the victim to become "aware that her body is resisting," it would constitute only larceny. *Id*. Force sufficient to rip the fabric of a sweater on the victim's person is indeed force necessarily capable of causing pain or injury to the person, and it far surpasses the mere touching at issue in *Johnson I* or the

"shove-less" purse snatching in *McKinney*.

Finally, Defendant argues that *Harris* is inapposite because there is a "huge disparity between the extreme, violent force involved in Colorado robbery and the minimal force involved in New Mexico robbery[.]" *Doc. 17* at 16. Defendant characterizes the force required under the Colorado statute as "extreme" because the *Harris* court found that Colorado robbery requires a violent taking. *Id.* at 15 (citing *Harris*, 844 F.3d at 1266-67). Consequently, the *Harris* court applied the dictionary definition of "violent," which is "characterized by extreme force . . . marked by abnormally sudden physical activity and intensity." 844 F.3d at 1267 n.4. However, New Mexico case law has established that the phrase "or violence," as used in the robbery statute, "do[es] not substantively state an alternative means of committing the offense[.]" *Curley*, 939 P.2d at 1104. State courts in New Mexico thus use the terms "force" and "violence" interchangeably when discussing whether the force element of the statute has been met by an offense. *See id.* Therefore, insofar as Defendant is relying on the dictionary definition of "violent" to suggest that Colorado robbery always requires extreme force, Defendant's argument undermines his own position given that the New Mexico robbery also requires violence.

Admittedly, there are differences between Colorado's and New Mexico's respective robbery jurisprudence by which one could distinguish *Harris* from the present case. However, *Harris* stands for a broader point. It serves as a reminder that

the definition set forth in *Johnson I* of "physical force," as used in the elements clause of the ACCA, encompasses actions falling far short of extreme violent force in the nature of Hollywood movies. *Johnson I* did reject the "slightest offensive touching" common-law standard of "force," instead demanding "a substantial degree of force." But even actions like pinching and slapping are sufficiently forceful under *Johnson I* to amount to "violent physical force." Indeed, *Johnson I* explicitly distinguished the "physical force" required by the ACCA elements clause from the force "*reasonably expected to cause* bodily injury" required by 18 U.S.C. § 922(g)(8)(C)(ii), explaining that the former was a lower standard than the latter. *See* 559 U.S. at 143 (emphasis added). Defendant's contention that New Mexico's robbery does not satisfy the *Johnson I* standard appears to be based largely on comparing it to this higher, and inapplicable, standard.

Based on the foregoing, I conclude that the New Mexico robbery statute "has as an element the use . . . of physical force against the person of another" as defined by *Johnson I*. 18 U.S.C. § 924(e)(2)(B)(i). Therefore, all crimes of robbery in New Mexico are categorically violent felonies.[7] There is significant consensus within this District on this

---

[7] This conclusion is also supported by the textual history of the ACCA and the Supreme Court's interpretation of its general scope. "Prior to the enactment of the current language, the [ACCA] applied its enhanced sentence to offenders with 'three previous convictions for robbery or burglary.'" *Begay v. United States*, 553 U.S. 137, 143 (2008). The Supreme Court has explained that Congress changed the language of the statute in order "to *expand* that definition to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))." *Id.* at 143-44 (emphasis added); *see also Taylor v. United States*, 495 U.S. 575, 582 (1990) (describing a 1986 amendment to the ACCA as one that "expanded the predicate offenses triggering the sentence enhancement from 'robbery or burglary' to 'a violent felony or a serious drug offense[.]'"). Certainly, if generic robbery was originally included and the definition was subsequently expanded, generic robbery would remain within the ambit of the ACCA. Moreover, as generic robbery is a crime against the person, it would fall within clause (i) of

question.  *See Garcia v. United States*, Mem. Op. & Order Overruling Proposed Findings

and Recommended Disposition, *doc. 37* in Civ. No. 16-240 JB/LAM (D.N.M. Jan. 31,

2017) (Browning, J.); *Hurtado v. United States*, Magistrate Judge's Proposed Findings and

Recommended Disposition, *doc. 17* in Civ. No. 16-646 JAP/GJF (D.N.M. Jan. 11, 2017);

*Contreras v. United States*, Order Adopting Magistrate Judge's Proposed Findings and

Recommended Disposition, *doc. 14* in 16-cv-0671 RB/SMV (D.N.M. Feb. 24, 2017); *see also*

*Baker*, Order Adopting Magistrate Judge's Proposed Findings and Recommended

Disposition, *doc. 14* in 16-cv-715 PJK/GBW (D.N.M. Mar. 17, 2017) (Kelly, J.); *but see*

*United States v. King*, Magistrate Judge's Proposed Findings and Recommended

Disposition, and Magistrate Judge's Supplemental Proposed Findings and

Recommended Disposition, *docs. 12, 15* in Civ. No. 16-501 MV/KK (D.N.M. Dec. 1,

2016).

      *ii.  Aggravated Assault with a Deadly Weapon*

     Next, Defendant argues that his 1997 conviction for aggravated assault with a

deadly weapon pursuant to N.M.S.A. § 30-3-2(A) is not a violent felony under the

ACCA.  *Doc. 1* at 12-19; *doc. 14* at 16-21.  This argument is foreclosed by a recent

---

the ACCA – the "force" clause.  Notably, New Mexico's robbery statute is narrower than the uniform
generic definition of robbery.  New Mexico still requires that a defendant "must use force before or
during the taking itself" in order to commit robbery.  *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1235
(10th Cir. 2009).  This requirement is a relic of the strict common law to which only five states, including
New Mexico, still adhere.  *Id.*  In contrast, generic robbery incorporates the more lenient "continuing
offense theory"—an act of force or violence committed to facilitate escape suffices to satisfy the force
element of robbery.  *See id.* at 1234-37.  Therefore, as generic robbery should remain within the force
clause of the ACCA after its expansion, so should New Mexico's narrower version.

published Tenth Circuit opinion which held that it is.  *United States v. Maldonado-Palma*, 839 F.3d 1244, 1248-50 (10th Cir. 2016).  Under controlling precedent, "aggravated assault with a deadly weapon under [N.M.S.A.] § 30-3-2(A) is categorically a crime of violence" under the sentencing guidelines.  *Id.* at 1250.  While a "crime of violence" under the guidelines is distinct from the "violent felony" provision of the ACCA, the Tenth Circuit has instructed that because the definition of the former is "almost identical" to the definition of the latter, an "analysis under the ACCA 'applies equally to the sentencing guidelines.'"  *United States v. Charles*, 576 F.3d 1060, 1068 n.2 (10th Cir. 2009) (citing *United States v. Tiger*, 538 F.3d 1297, 1298 (10th Cir. 2008)).  The Court may therefore apply relevant precedent regarding one provision interchangeably to the other.  Thus, *Maldonado-Palma* compels the conclusion that Defendant's aggravated assault with a deadly weapon offense is a violent felony under the ACCA.

Defendant argues that the Court should not consider itself bound by *Maldonado-Palma* or its predecessor on which much of its reasoning was based, *Ramon Silva*, because these cases were wrongly decided.  *See doc. 14* at 19-20.  In support, Defendant cites to a recent New Mexico Court of Appeals case in which a defendant was convicted of aggravated assault of his wife when he shot his son who was standing next to his wife.  *State v. Branch*, 387 P.3d 250, 256-57 (N.M. Ct. App. 2016).  The *Branch* court held that the defendant's conviction should be upheld despite the fact that the defendant did not specifically intend to threaten his wife.  *See id.*  Defendant argues that *Branch* stands

for the proposition that aggravated assault can therefore be committed against a victim in New Mexico by, for instance, "negligently handling a gun in a way that reasonably induces fear in someone." *Doc. 14* at 19. This is not so. *Branch* explicitly states that liability under the statute requires a "mental state of conscious wrongdoing," and that the conviction could only stand with proof that the defendant "did an unlawful act which caused the bystander to reasonably believe that she was in danger of receiving an immediate battery, that the act was done with a deadly weapon, and that *it was done with general criminal intent*." 387 P.3d at 256 (citation omitted) (emphasis added).

Defendant is correct in stating that the crime does not entail the specific intent to intimidate a particular victim. However, "[t]he presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA." *Ramon Silva*, 608 F.3d at 673. In *Ramon Silva*, the Tenth Circuit considered whether "apprehension causing" aggravated assault (i.e., "engaging in conduct with a deadly weapon that causes the victim to believe or she was about to receive a battery") constituted a violent felony under the ACCA, despite the statute's requirement of only general criminal intent rather than specific intent to cause apprehension in the victim. *Id.* at 669-73. In finding that it did, the court held that as long as a crime requires that a defendant intentionally engaged in conduct that "constitut[ed] the threatened use of physical force," such a crime has as an element the threatened use of physical force meeting the *Johnson I* standard, even if the defendant

did not specifically intend to communicate such threat of force.  *Id.* at 673.  This conclusion is not at odds with *Branch*, which preserved the prerequisite of general criminal intent under the aggravated assault statute.  Therefore, Defendant is incorrect to state that mere negligent handling of a firearm could suffice to uphold a conviction of aggravated assault in New Mexico after *Branch*.  Such an act does not involve the requisite "mental state of conscious wrongdoing."  *Branch*, 387 P.3d at 256.

Therefore, I recommend that the Court follow the binding precedent of *Maldonado-Palma*, which compels the conclusion that aggravated assault with a deadly weapon is a violent felony under the elements clause of the ACCA.  *See* 839 F.3d at 1248-50.

### iii.  Aggravated Battery with a Deadly Weapon

The third predicate offense underlying the application of the ACCA enhancement to Defendant's conviction is Aggravated Battery, Deadly Weapon, in violation of N.M.S.A. § 30-3-5.  That statute provides:

A. Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another.

B. Whoever commits aggravated battery, inflicting an injury to the person which is not likely to cause death or great bodily harm, but does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

C. Whoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M.S.A. § 30-3-5. Defendant argues that his conviction of aggravated battery with a deadly weapon does not constitute a violent felony because "[t]he least touching of another's person willfully, or in anger, is a battery" and "[b]attery does not even require touching of the person of another. Touching or applying force to another's clothing or something else intimately connected with the victim's body is sufficient." *Doc. 1* at 20. This argument is without merit.

As an initial matter, Defendant ignores an important element which is present even in the misdemeanor version of aggravated battery – the intent to injure. One certainly could conclude that the application of force to the person of another with the intent to injure the person qualifies under *Johnson I* as the attempted or threatened use of "force capable of causing physical pain or injury to another person." 559 U.S. at 140; *see State v. Vallejos*, 9 P.3d 668, 674 (N.M. Ct. App. 2000) ("The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury."). However, because Defendant was convicted of a more serious felony version of aggravated battery, the Court need not decide that question.

Defendant was convicted of Aggravated Battery with a Deadly Weapon, in violation of N.M.S.A. § 30-3-5(C). The felony versions of the crime are divisible from the misdemeanor version. *See Mathis*, 136 S. Ct. at 2249 (statutes listing elements in the alternative, thereby defining multiple crimes, are divisible); *see also* N.M.S.A. § 31-18-15(A)(11) (providing for a basic sentence of three years imprisonment for a third-degree

felony such as aggravated battery with a deadly weapon). In short, a conviction under N.M.S.A. § 30-3-5(C) enhances the maximum punishment and requires proof of one of the following: (i) that the battery caused great bodily harm; (ii) that the battery was accomplished by the use of a deadly weapon; or (iii) that the battery was accomplished in a manner whereby great bodily harm could be inflicted. Certainly, if the battery caused great bodily harm or was done in a manner whereby great bodily harm could be inflicted, the battery involved "force capable of causing physical pain or injury to another person" as required by *Johnson I*. 559 U.S. at 140. With respect to a battery in which a deadly weapon was used, the answer is dictated by *Maldonado-Palma*. 839 F.3d 1244.

As discussed above, in *Maldonado-Palma*, the court considered whether a New Mexico conviction for aggravated assault with a deadly weapon categorically constituted a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[8] *Id.* at 1246-50. The court first confirmed that, under New Mexico law, aggravated assault with a deadly weapon requires *use* of the deadly weapon—mere possession does not suffice to satisfy the elements. 839 F.3d at 1249-50. After reviewing the New Mexico definition of "deadly weapon," the court concluded that employing such a weapon "necessarily threatens the use of physical force, i.e., 'force capable of causing physical

---

[8] The guideline amendments made effective November 1, 2016 eliminated the relevant text of this portion of the guidelines, which previously instructed the sentencing court to increase a defendant's base offense level if "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence[.]" The revision does not affect the present analysis.

pain or injury to another person.'" *Id*. at 1250 (quoting *Johnson I*, 559 U.S. at 140); *see also*

*Ramon Silva*, 608 F.3d. at 669-71.

As with aggravated assault with a deadly weapon, aggravated battery with a

deadly weapon requires proof of use of the deadly weapon under New Mexico law. *See*

N.M.S.A. § 30-3-5(C); *see also* N.M. R. CR. 14-322 (instructing that aggravated battery

with a deadly weapon requires proof that the defendant "touched or applied force to"

the victim with a deadly weapon and that "[t]he defendant *used*" a deadly weapon

(emphasis added)). Consequently, the logic in *Maldonado-Palma* compels the conclusion

that a New Mexico conviction for aggravated battery with a deadly weapon

categorically qualifies as a violent felony under the ACCA. In fact, given that

*Maldonado-Palma* involved only an assault, and Defendant's conviction involved a

completed battery, the logic applies in even greater force here. This conclusion is

further supported by the fact that the Supreme Court in the *Johnson I* opinion itself cited

with approval Black's definition of "violent felony" as "a crime characterized by

extreme physical force, such as . . . *assault and battery with a dangerous weapon*" while

parsing the meaning of the ACCA's force clause. 559 U.S. at 140-41 (emphasis added).

In conclusion, all three of the means by which one can violate N.M.S.A. § 30-3-

5(C) satisfy the force requirement set out in *Johnson I*. As such, Defendant's conviction

under that statute constitutes a "violent felony" under the ACCA.

## IV.   CONCLUSION

Defendant's challenge to his sentence under *Johnson II* should be denied.  Even post-*Johnson II*, his criminal history includes at least three violent felony convictions which trigger the application of the ACCA's fifteen-year mandatory minimum and the sentencing guideline enhancement under U.S.S.G. § 4B1.4(b).

Accordingly, I recommend that the Court DENY Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and dismiss this case with prejudice.

GREGORY B. WORMUTH
United States Magistrate Judge

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**